**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN GAGLIARDI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 09-1612** |
| | ) | |
| **EQUIFAX INFORMATION** | ) | **Senior Judge Donetta W. Ambrose** |
| **SERVICES, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

**I.      Synopsis**

This matter comes before the Court on a motion for summary judgment filed by the

Defendant.  ECF No. 34.  For the reasons that follow, that motion will be granted.

**II.     Background**

Defendant Equifax Information Services, LLC ("Equifax"), is a limited liability company

maintaining its principal place of business in Atlanta, Georgia.  ECF Nos. 38 & 45 at ¶ 1.

Equifax is a "consumer reporting agency" within the meaning of the Fair Credit Reporting Act

("FCRA") [15 U.S.C. § 1681 *et seq.*].[1]  *Id.* at ¶ 2.  As a consumer reporting agency, Equifax

prepares credit reports based on information received from creditors, public records, merchants

and other sources.  *Id.*  The credit reports are provided to subscribers with legitimate reasons for

seeking the relevant information.  *Id.*  Equifax maintains credit history files covering more than

---

[1] The FCRA defines the term "consumer reporting agency" as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."  15 U.S.C. § 1681a(f).

200 million consumers. *Id.* at ¶ 3. Thousands of data-furnishers provide Equifax with over one billion updates during the course of a typical month. *Id.*

On June 6, 2008, Plaintiff John Gagliardi ("Gagliardi") commenced an action against Equifax, Experian Information Solutions, Inc. ("Experian"), Transunion, Inc. ("Transunion"), Verizon of Pennsylvania ("Verizon"), AT&T, Inc. ("AT&T"), and Allied Interstate ("Allied") in the Court of Common Pleas of Allegheny County, Pennsylvania, alleging violations of the FCRA, the Fair Debt Collection Practices Act ("FDCPA") [15 U.S.C. § 1692 *et seq.*], Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") [73 PA. STAT. § 201-1 *et seq.*], and the tort law of Pennsylvania. Civil Action No. 08-892, ECF No. 1. Equifax was involved in the case because of its alleged failure to conduct a reasonable reinvestigation into account-related disputes that Gagliardi had with Verizon, AT&T and Allied. ECF Nos. 36 & 45 at ¶ 23. The action was removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. Civil Action No. 08-892, ECF No. 1. Gagliardi and Equifax settled their dispute on February 17, 2009. ECF Nos. 36 & 45 at ¶ 24. In accordance with the settlement agreement, Gagliardi reviewed a copy of his credit disclosure with Equifax and verified that it was true, accurate and complete. *Id.* This credit disclosure contained no credit accounts, collections, or public records. *Id.* at ¶ 25. All claims against Equifax in that action were dismissed with prejudice on March 11, 2009. *Id.* at ¶ 26.

Columbia Gas of Pennsylvania ("Columbia Gas") is one of Equifax's subscribers. *Id.* at ¶ 47. In order to become a subscriber, Columbia Gas was required to complete Equifax's credentialing procedure. *Id.* at ¶ 48. As a part of its subscriber agreement with Equifax, Columbia Gas certified that it would comply with all FCRA requirements, and that it would seek consumer reports only for purposes that were permissible under the FCRA. *Id.* at ¶ 49. Equifax

follows procedures that are designed to ensure that consumer reports and credit reviews are provided only to those entities deemed to have a permissible purpose for obtaining the relevant information.[2] *Id.* at ¶ 82.

Gagliardi resided at 735 Waddell Avenue in Clairton, Pennsylvania, during the spring of 2009. *Id.* at ¶ 4. Natural gas service for the residence was provided by Columbia Gas. On April 24, 2009, Columbia Gas discontinued natural gas service for Gagliardi's residence. *Id.* at ¶ 5. In a "credit/service denial statement" dated April 27, 2009, Columbia Gas informed Gagliardi that he owed $1,487.70 for services provided to the residence through March 30, 2009. ECF No. 36-2 at 85. The statement from Columbia Gas further declared:

> Based on the credit score obtained from Equifax, a national credit-reporting agency, you failed to meet our credit guidelines.

*Id.* Gagliardi was instructed to pay $1,813.70 in order to restore service to his residence. *Id.* This amount accounted for the $1,487.70 owed for past services, a security deposit in the amount of $302.00, and a reconnection fee in the amount of $24.00.[3] *Id.* The statement was electronically signed by a notation reading "u904159." *Id.*

Gagliardi mailed a copy of the statement to Equifax on April 30, 2009. *Id.* at 86-88. The statement was accompanied by a letter stating as follows:

> Enclosed please see the credit/service denial statement dated April 27, 2009 by Columbia Gas of Pennsylvania. Note that your utility corporation customer did not include your address or telephone number or how otherwise how [sic] to contact you in its notice of adverse action. Please also notice that instead of having the letter signed by a human associate, the representative "happy to assist" me is a computerized cyber-niche known as "u904159."

---

[2] The standards for determining whether a purpose is "permissible" are codified at 15 U.S.C. § 1681b.
[3] The total amount of the security deposit reflected on the statement was $604.00, but Gagliardi was only required to pay half of that amount in order to restore service to his residence. ECF No. 36-2 at 85. The remaining $302.00 was payable by means of two subsequent installment payments in the amount of $151.00 apiece. *Id.*

According to Columbia Gas of Pennsylvania, an unfavorable credit score generated by you caused me to fail to meet credit guidelines needed to argue a restoration of my account with the utility service here.

I am over 75 years old, medically needy and require immediate restoration now. Please correct the false report so that I can receive the services that I require.

Please also send me a copy of the Equifax credit report used in this matter so that I may respond to it with my suggestions for corrections.

*Id.* at 86. Equifax received Galiardi's correspondence on May 12, 2009. ECF Nos. 36 & 45 at ¶ 30. Since Gagliardi had received an adverse-action letter from Columbia Gas, he was entitled to a free copy of his credit disclosure. *Id.* at ¶ 32. For this reason, Equifax proceeded to mail a copy of Gagliardi's credit disclosure to his residence by means of an automated process. *Id.* In a responsive letter to Equifax dated May 22, 2009, Gagliardi stated that either Columbia Gas was falsely claiming to have based its decision on a credit report supplied by Equifax or Equifax was "falsely concealing its participation in the Columbia Gas matter." ECF No. 36-3 at 1.

A few days after receiving the statement from Columbia Gas, Gagliardi disputed the accuracy of the bill and demanded more information. ECF Nos. 36 & 45 at ¶ 6. Columbia Gas quickly restored service to Gagliardi's residence. *Id.* Gagliardi and Columbia Gas entered into an agreement requiring Gagliardi to make ten monthly installment payments in the amount of $167.00 in addition to his regular gas bills in order to account for overdue payments and resulting fees. *Id.* at ¶ 10. The first installment was paid on August 5, 2009. *Id.* at ¶ 11. The second installment was never paid, since Gagliardi did not receive a bill from Columbia Gas for the month of September. *Id.* at ¶ 12. On September 21, 2009, Columbia Gas again terminated natural gas service for Gagliardi's residence. *Id.* at ¶ 13. The next day, Gagliardi moved to another residence that he owned. *Id.* at ¶ 14. It was located at 1407 Lovedale Hollow Road. ECF No. 36-2 at 25-26. Gagliardi apparently moved because he needed access to heat and hot

water.  ECF Nos. 36 & 45 at ¶ 14.  Columbia Gas never restored natural gas service to Gagliardi's prior residence.  *Id.* at ¶ 15.

Gagliardi underwent eye surgery in October 2009.  *Id.* at ¶ 16.  An acquaintance, Stacy Perry ("Perry"), transported Gagliardi to the residence located on Lovedale Hollow Road after the surgery.  *Id.* at ¶ 17.  Perry stayed at the residence for two nights, since Gagliardi had been advised that someone needed to be with him during the early stages of his recovery.  *Id.*  On one occasion, Perry apparently had to access the residence through a window, since Gagliardi had mistakenly locked the door that was normally used to enter and exit the residence.  *Id.* at ¶ 18.  Shortly after Perry's brief stay, the residence was burglarized.  *Id.* at ¶ 19.  The thieves stole a motorcycle, two money orders, and $3,700.00 in cash.  *Id.*  Gagliardi attributed the burglary to Perry and her boyfriend, Ron Beck ("Beck").  ECF No. 36-2 at 28-32.  After the burglary, Gagliardi left the residence and moved into an industrial building that he owned at 191 Wall Road in Jefferson Hills, Pennsylvania.  *Id.* at ¶ 22.  A portion of the industrial building had evidently been set up like an apartment.  *Id.*

On December 8, 2009, Gagliardi sent Equifax a letter requesting a free annual credit disclosure.  ECF No. 36-2 at 90.  Enclosed with the letter was a copy of Gagliari's driver's license.  *Id.* at 91.  The request was received by Equifax on December 16, 2009.  ECF Nos. 36 & 45 at ¶ 35.  Equifax responded by mailing Gagliardi a copy of his credit disclosure by means of an automated process.  *Id.* at ¶ 36.  Shortly thereafter, Gagliardi requested an additional credit disclosure from Equifax by completing a standard request form.  *Id.* at ¶ 38.  Equifax responded by informing Gagliardi that the requested credit disclosure had already been sent.  ECF No. 36-1 at ¶ 53.

Gagliardi commenced this action against Equifax and Columbia Gas in the Court of Common Pleas of Allegheny County, Pennsylvania, on November 2, 2009, alleging violations of the FCRA, the UTPCPL, the Racketeer Influenced and Corrupt Organizations ("RICO") Act [18 U.S.C. § 1961 *et seq.*], and the tort law of Pennsylvania. ECF No. 1-1 at ¶¶ 45-182. The case was removed to this Court on December 7, 2009. ECF No. 1. The claims against Columbia Gas were dismissed on January 14, 2010, pursuant to the terms of a settlement agreement entered into by Gagliardi and Columbia Gas. ECF No. 9 at ¶ 2. The next day, Gagliardi filed an amended complaint against Equifax, reasserting many of the same claims that had been included within his original complaint. ECF No. 10 at ¶¶ 45-143. Equifax filed a motion for summary judgment on August 26, 2010. ECF No. 34. That motion is the subject of this memorandum opinion.

## III. <u>Standard of Review</u>

Summary judgment may only be granted where the moving party shows that there is no genuine dispute as to any material fact, and that a judgment as a matter of law is warranted. FED. R. CIV. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the Court must enter summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In evaluating the evidence, the Court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Township*, 478 F.3d 144, 147 (3d Cir. 2007). The burden is initially on the moving party to demonstrate that the evidence contained in the record does not create a genuine issue of material fact. *Conoshenti v. Public Service Electric & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004). A dispute is "genuine" if the evidence is such that a reasonable trier of fact could return a verdict

for the nonmoving party.  *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005).  Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the admissible evidence contained in the record would be insufficient to carry the nonmoving party's burden of proof.  *Celotex Corp.*, 477 U.S. at 322.  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions, admissions or answers to interrogatories in order to show that there is a genuine issue of material fact for trial.  *Id.* at 324.  The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his or her pleadings.  *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

## IV.   Discussion

Gagliardi's federal claims arise under the RICO Act and the FCRA.  ECF No. 10 at ¶¶ 68-130.  He also asserts claims under Pennsylvania law for intentional and/or negligent infliction of emotional distress and an alleged violation of the UTPCPL.  *Id.* at ¶¶ 45-53, 131-138.  The Court has jurisdiction over Gagliardi's federal claims pursuant to 15 U.S.C. § 1681p, 18 U.S.C. § 1964 and 28 U.S.C. § 1331.  Supplemental jurisdiction over his state claims is predicated on 28 U.S.C. § 1367(a).  Venue is proper under 28 U.S.C. § 1391(b).

### A.     The RICO Claims

Section 1962(c) of the RICO Act provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).  As used in this statute, the term "person" "includes any individual or entity

7

capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). The term "enterprise" "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The crime of mail fraud, as defined by 18 U.S.C. § 1341, constitutes "racketeering activity" within the meaning of the RICO Act.[4] 18 U.S.C. § 1961(1). Conspiracies to violate § 1962(c) are proscribed by § 1962(d). 18 U.S.C. § 1962(d). Pursuant to § 1964(c), "[a]ny person injured in his business or property by reason of a violation of [§ 1962] . . . may sue therefor in any appropriate United States district court . . . ." 18 U.S.C. § 1964(c).

As the United States Supreme Court explained in *Sedima v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), a violation of § 1962(c) consists of (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. A "pattern of racketeering activity" cannot be established without a *minimum* of "two acts of racketeering activity" within a period of ten years. 18 U.S.C. § 1961(5); *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 238, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)(observing that § 1961(5) concerns only the minimum *number* of predicates necessary to establish a pattern," and that "there is something to a RICO pattern *beyond* simply the number of predicate acts involved")(emphasis in original). In order for two or more predicate acts of racketeering activity to constitute a "pattern," they must

---

[4] The offense of mail fraud is committed by "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing . . . ." 18 U.S.C. § 1341.

not only be *related* to one another, but must also amount to (or pose a threat of) *continued* criminal activity. *H.J. Inc.*, 492 U.S. at 239; *Tabas v. Tabas*, 47 F.3d 1280, 1292 (3d Cir. 1995).

Even if a violation of § 1962(c) is established, a plaintiff seeking to proceed under § 1964(c) must show that he or she has been "injured in his [or her] business or property *by reason of*" that statutory violation. 18 U.S.C. § 1964(c)(emphasis added). In *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 265-270, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992), the Supreme Court construed the phrase "by reason of," as it appears in § 1964(c), to require a showing of "proximate" causation rather than simply a showing of "but-for" causation. In any case involving the issue of proximate causation, the "central question" is "whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461, 126 S.Ct. 1991, 164 L.Ed.2d 720 (2006). In other words, a plaintiff seeking redress for a violation of § 1962(c) must satisfy § 1964(c)'s "demand for some direct relation between the injury asserted and the injurious conduct alleged." *Holmes*, 503 U.S. at 268.

Gagliardi alleges that Equifax and Columbia Gas violated the RICO Act by engaging in a "pattern" of mail fraud. ECF No. 10 at ¶¶ 68-122. Even if it is assumed that Equifax and Columbia Gas were sufficiently associated to constitute an "enterprise," and that they engaged in the "racketeering activity" of mail fraud, Gagliardi cannot establish a violation of § 1962(c).[5] The *only* instance of "mail fraud" alleged by Gagliardi is the mailing by Columbia Gas of the "credit/service denial statement" of April 27, 2009, which included a written indication that he had failed to meet Columbia Gas' "credit guidelines" based on a "credit score obtained from Equifax." ECF No. 10 at ¶ 97; ECF No. 36-2 at 85. No other predicate act is alleged. At a *minimum*, a plaintiff seeking to establish a violation of § 1962(c) must show that the defendant

---

[5] Because Gagliardi cannot show that Equifax and Columbia Gas engaged in a "pattern" of racketeering activity, the Court need not consider whether their association constituted an "enterprise," or whether the conduct of this hypothetical "enterprise" constituted mail fraud within the meaning of § 1341.

committed *two* acts of racketeering activity during the course of a ten-year period.  18 U.S.C. §

1961(5); *H.J. Inc.*, 492 U.S. at 237-238; *Sedima*, 473 U.S. at 496, n. 14.  It is axiomatic that a

single act of racketeering activity cannot constitute a "pattern" within the meaning of § 1962(c).

*Conkling v. Turner*, 18 F.3d 1285, 1297 (5th Cir. 1994).  Gagliardi's RICO claims lack viability

for that reason alone.

Even if Gagliardi could establish a violation of § 1962(c), he would be unable to show

that he was injured "by reason of" that violation.  18 U.S.C. § 1964(c).  Gagliardi seeks

compensation for "injuries" stemming from the termination of his natural gas service in

September 2009, his relocation from the residence on Waddell Avenue to the residence on

Lovedale Hollow Road, the subsequent burglary at the residence on Lovedale Hollow Road, and

the loss of business resulting from his need to use part of the industrial building on Wall Road as

an apartment.  ECF No. 10 at ¶ 75-84.  All of the "injuries" alleged by Gagliardi relate, in one

form or another, to the permanent termination of his natural gas service in September 2009.  *Id.*

at ¶¶ 75-79.  They do not relate to the temporary termination of his service in April 2009.  The

record contains no evidence indicating that Equifax played a role in Columbia Gas' decision to

discontinue Gagliardi's natural gas service in September 2009.  When Gagliardi's service was

initially terminated, he was informed that it would be restored upon Columbia Gas' receipt of

payments accounting for past services, a security deposit and a reconnection fee.  ECF No. 36-2

at 85.  He was not told that his future entitlement to service was contingent upon an improvement

in his credit score.[6]  His service was quickly restored by Columbia Gas, after he had agreed to

make ten monthly installment payments in the amount of $167.00.  ECF No. 36-2 at 3, 49-50.

Gagliardi testified that he had not made the September 2009 installment payment, since

---

[6] Gagliardi was given the option of supplying a third-party guarantor who was able to meet Columbia Gas' "credit
guidelines."  ECF No. 36-2 at 85.  This option, however, was simply offered as an alternative to Gagliardi in the
event that he was unable to pay the requested $604.00 security deposit.  *Id.*

Columbia Gas had neglected to send him a bill. *Id.* at 13. Regardless of whether Columbia Gas was at fault for Gagliardi's failure to make the payment, there is no evidence suggesting that Equifax was involved in the *second* termination of his service. During the course of his deposition, Gagliardi acknowledged that the *only* statement from Columbia Gas making reference to Equifax had been the statement of April 27, 2009. *Id.* at 35-38. Gagliardi's failure to make his installment payment broke the chain of causation between the alleged interactions between Columbia Gas and Equifax during the spring of 2009 and the discontinuation of Gagliardi's natural gas service in September 2009. *Hemi Group, LLC v. City of New York*, ___U.S. ___, 130 S.Ct. 983, 991, 175 L.Ed.2d 943 (2010)(remarking that, "in the RICO context, the focus is on the directness of the relationship between the conduct and the harm").

The link between Equifax's alleged "racketeering activity" and Gagliardi's damages is even more attenuated with respect to the "injuries" resulting from the burglary.[7] Gagliardi testified that he had moved into the industrial building in the immediate aftermath of the burglary, fearing for his safety. ECF No. 36-2 at 25. He explained that he had been hospitalized because of anxiety stemming from the incident. *Id.* at 54-55. He presumably would have remained at the residence on Lovedale Hollow Road had the burglary never occurred. In that scenario, Gagliardi would not have incurred the loss of business associated with his need to move into the industrial building. ECF No. 10 at ¶¶ 76-77. In any event, the "injuries" caused by the burglary are simply not attributable to the actions of Equifax or Columbia Gas. *Anza*, 547 U.S. at 458 (explaining that a plaintiff cannot invoke § 1964(c) to redress injuries resulting from "a set of actions . . . entirely distinct from the alleged RICO violation"); *Holmes*, 503 U.S. at 269 (stating that "the less direct an injury is, the more difficult it becomes to ascertain the amount of

---

[7] Most of the "injuries" allegedly sustained by Gagliardi are attributable to the burglary rather than to any actions taken by Equifax or Columbia Gas. ECF No. 36-2 at 25, 52-55.

a plaintiff's damages attributable to the violation, as distinct from other, independent, factors").

Under ordinary principles of tort law, an intervening criminal act perpetrated by a third party constitutes a superseding cause of a plaintiff's injuries, absolving other potential defendants of liability for their own actions or omissions, unless the plaintiff can show that the intervening criminal act was a reasonably foreseeable consequence of those actions or omissions. *Calex Express, Inc. v. Bank of America*, 401 F.Supp.2d 407, 413-414 (M.D.Pa. 2005). The causation standard applicable to RICO claims is even more demanding, since the Supreme Court has admonished that "the directness of the relationship between the conduct and the harm" must be evaluated in the RICO context without reference to "the concept of foreseeability." *Hemi Group, LLC*, 130 S.Ct. at 991. Given that Equifax would not be liable for the injuries caused by the burglary under ordinary principles of tort law, it follows *a fortiori* that liability cannot attach in this case, which is governed by the more rigorous standard of proximate causation applicable to claims brought under § 1964(c).

Gagliardi's amended complaint includes averments referring to a "RICO conspiracy." ECF No. 10 at ¶¶ 112-115. He apparently seeks to pursue a conspiracy claim under § 1962(d). Nonetheless, a claim under § 1962(d) cannot arise in the absence of a substantive RICO violation committed by at least one of the alleged co-conspirators.[8] *Meeks-Owens v. Indymac Bank, F.S.B.*, 557 F.Supp.2d 566, 572 (M.D.Pa. 2008). Since Gagliardi cannot establish that either Equifax or Columbia Gas committed a violation of § 1962(c), his claim under § 1962(d) cannot proceed. *Lum v. Bank of America*, 361 F.3d 217, 227, n. 5 (3d Cir. 2004). Accordingly,

---

[8] A plaintiff who is "injured" by an unlawful RICO conspiracy can sue co-conspirators for violations of § 1962(d) even if the co-conspirators have not *themselves* committed substantive RICO violations. *Beck v. Prupis*, 529 U.S. 494, 506-507, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000). Nevertheless, a conspiracy to commit a substantive RICO violation cannot be actionable unless one party to the conspiracy actually commits a substantive RICO violation. *Meeks-Owens v. Indymac Bank, F.S.B.*, 557 F.Supp.2d 566, 572 (M.D.Pa. 2008).

Equifax's motion for summary judgment will be granted with respect to both of Gagliardi's

RICO claims.

### B.    The FCRA Claims

Gagliardi alleges multiple violations of the FCRA.[9]  ECF No. 10 at ¶¶ 123-130.

Aggrieved individuals can seek redress for damages resulting from both "willful" and

"negligent" noncompliance with that statute.  18 U.S.C. §§ 1681n, 1681o.  Each of Gagliardi's

claims will be addressed.

Section 1681s-2(a)(3) of the FCRA provides:

> If the completeness or accuracy of any information furnished by any person to
> any consumer reporting agency is disputed to such person by a consumer, the
> person may not furnish the information to any consumer reporting agency without
> notice that such information is disputed by the consumer.

15 U.S.C. § 1681s-2(a)(3).  When a consumer reporting agency is notified pursuant to § 1681s-

2(a)(3) that information furnished to the agency "is disputed by the consumer," § 1681c(f)

requires the agency to "indicate that fact in each consumer report that includes the disputed

information."[10]  15 U.S.C. § 1681c(f).  Gagliardi contends that Equifax violated § 1681c(f) by

failing to indicate in its consumer reports that he disputed information relevant to his credit

history in April 2009 and September 2009.[11]  ECF No. 10 at ¶ 127.

By its very terms, § 1681c(f) applies only where a consumer reporting agency is notified

of a dispute pursuant to § 1681s-2(a)(3).  15 U.S.C. § 1681c(f).  Section 1681s-2(a)(3) requires a

*provider* of a consumer's credit information to notify the credit reporting agency that the

---

[9] The FCRA defines the term "consumer" simply as "an individual."  15 U.S.C. § 1681a(c).  Therefore, it is
undisputed that Gagliardi is a "consumer" within the meaning of the FCRA.

[10] The standards for determining whether a report qualifies as a "consumer report" are codified at 15 U.S.C. §
1681a(d).

[11] Although Gagliardi makes reference to § 1681c(d), that provision is clearly inapplicable to this case.  ECF No. 10
at ¶ 127.  There is no evidence suggesting that Gagliardi filed for bankruptcy, or that his credit score was adversely
affected by "the number of enquiries" received by Equifax regarding his credit history.  15 U.S.C. § 1681c(d)(1)-(2).

*information being provided* is disputed by the consumer. *Soghomonian v. United States*, 278 F.Supp.2d 1151, 1173-1174 (E.D.Cal. 2003). In order to establish that Equifax had a statutory duty under § 1681c(f) to "indicate" the existence of a dispute concerning his alleged indebtedness to Columbia Gas in the applicable consumer report, Gagliardi must demonstrate that Columbia Gas *furnished* Equifax with disputed information, and that Columbia Gas provided Equifax with notice that the *information being furnished* was in dispute. 15 U.S.C. §§ 1681c(f), 1681s-2(a)(3). Neither showing can be made on the basis of the existing record.

Vicki Banks ("Banks") is employed by Equifax as a Senior Consumer Relations Analyst II. ECF No. 36-1 at ¶ 4. In a declaration dated August 26, 2010, Banks reported that Equifax had not received a notice from Columbia Gas suggesting that Gagliardi's account was in dispute. *Id.* at ¶ 44. She further declared that Equifax had no record of information from Columbia Gas concerning Gagliardi's credit subsequent to March 2009. *Id.* at ¶ 45. The statement of April 27, 2009, stated only that Gagliardi had failed to meet Columbia Gas' "credit guidelines" based on a "credit score" *obtained from Equifax*. ECF No. 36-2 at 85. It made no reference to information *furnished to Equifax* by Columbia Gas. *Id.* Gagliardi points to no evidence which contradicts the statements contained in Banks' declaration. Since Gagliardi cannot demonstrate that Equifax incurred a statutory duty under § 1681c(f) to begin with, it necessarily follows that he cannot establish a violation of that provision.

Section 1681d of the FCRA contains provisions governing requests for, and the preparation of, investigative consumer reports. 15 U.S.C. § 1681d. Gagliardi alleges that Equifax violated § 1681d. ECF No. 10 at ¶ 127. The FCRA defines the term "investigative consumer report" as "a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through

personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information." 15 U.S.C. § 1681a(e). The information contained in an investigative consumer report does not include "specific factual information on a consumer's credit record obtained directly from a creditor of the consumer or from a consumer reporting agency when such information was obtained directly from a creditor of the consumer or from the consumer." *Id.* The record contains no evidence suggesting that Gagliardi was the subject of an investigative consumer report. The most that can be inferred from the statement of April 27, 2009, is that Equifax may have communicated "specific factual information" concerning Gagliardi's credit score to Columbia Gas. ECF No. 36-2 at 85. Given that Gagliardi cannot show that an investigative consumer report was established in the first place, he clearly cannot establish a violation of § 1681d.

Section 1681e(b) of the FCRA requires a consumer reporting agency preparing a consumer report to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Gagliardi contends that Equifax violated § 1681e(b). ECF No. 10 at ¶ 127. In order to establish an actionable violation of § 1681e(b), Gagliardi must show that: (1) a consumer report prepared by Equifax contained inaccurate information about him; (2) the inaccuracy was attributable to Equifax's failure to "follow reasonable procedures to assure maximum possible accuracy of the information" contained in the consumer report; (3) he sustained an injury; and (4) his injury was caused by Equifax's inclusion of the inaccurate information in the consumer report. *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996).

Gagliardi's earlier action against Equifax was settled on February 17, 2009. ECF No. 36-1 at ¶ 48. Pursuant to the terms of the settlement agreement, Gagliardi reviewed a copy of his credit disclosure with Equifax and verified that it was true, accurate and complete. *Id.* During the course of his deposition, Gagliardi testified that the credit disclosure had been accurate as of March 2009. ECF No. 36-2 at 47. He also testified that he had not received any credit-based denial letters subsequent to Columbia Gas' statement of April 27, 2009. *Id.* at 48. In light of his testimony, Gagliardi cannot demonstrate that Equifax prepared a consumer report containing inaccurate information about him.[12] Even if he were able to make such a showing, he would nevertheless be unable to establish that his injuries were *caused by* Equifax's conduct. *Philbin*, 101 F.3d at 970 (remarking that "the burden of proving causation remains with the plaintiff at all times and never shifts to the defendant"). As noted earlier, the record is devoid of evidence suggesting that Equifax was responsible for Columbia Gas' decision to terminate Gagliardi's natural gas service on September 21, 2009. Gagliardi testified that he had not made the installment payment to Columbia Gas for the month of September. ECF No. 36-2 at 13, 51. Although he attributes his failure to make the payment to the lack of a bill from Columbia Gas, Gagliardi points to no evidence linking Equifax to the actions or inactions of Columbia Gas after the restoration of his service in April 2009. *Id.* For these reasons, no actionable violation of § 1681e(b) can be established.

Gagliardi alleges that Equifax violated § 1681e(d)(2) of the FCRA. ECF No. 10 at ¶ 127. This statutory provision can only be understood by reference to the remainder of subsection (d). Section 1681e(d) provides:

**(d) Notice to users and furnishers of information.**

---

[12] Given Gagliardi's failure to show that Equifax prepared a consumer report containing inaccurate information, the Court has no occasion to consider whether Equifax's procedures were adequate to satisfy the demands of § 1681e(b). ECF No. 35 at 14-15.

(1) Notice requirement.  A consumer reporting agency shall provide to any person—
> (A) who regularly and in the ordinary course of business furnishes information to the agency with respect to any consumer; or
> (B) to whom a consumer report is provided by the agency;

a notice of such person's responsibilities under this title [15 U.S.C. § 1681 *et seq.*].

(2) Content of notice.  The Federal Trade Commission shall prescribe the content of notices under paragraph (1), and a consumer reporting agency shall be in compliance with this subsection if it provides a notice under paragraph (1) that is substantially similar to the Federal Trade Commission prescription under this paragraph.

15 U.S.C. § 1681e(d).  As this statutory language illustrates, § 1681e(d)(2) simply requires the Federal Trade Commission ("FTC") to prescribe the content of notices that credit reporting agencies must send to furnishers of information and recipients of consumer reports about their obligations under the FCRA, thereby providing such agencies with a template for ensuring statutory compliance.  It is not clear how Gagliardi believes that Equifax contravened this statutory mandate.  In her declaration, Banks stated that "Equifax complies with § 1681e(d) by regularly providing its subscribers [with] notice of their responsibilities under the FCRA."  ECF No. 36-1 at ¶ 14.  She further declared that Columbia Gas, as a part of its subscriber agreement with Equifax, was required to certify that it would obtain consumer reports only for purposes permitted under the FCRA.  *Id.* at ¶ 39.  The record contains no evidence which contradicts Banks' assertions.  Consequently, Gagliardi cannot demonstrate that Equifax has violated § 1681e(d)(2).

The FCRA requires a credit reporting agency, at the request of a consumer, to "clearly and accurately disclose" "[a]ll information in the consumer's file at the time of the request," including "[t]he sources of the information" and "[a] record of all inquiries received by the agency during the 1-year period preceding the request that identified the consumer in connection

with a credit or insurance transaction that was not initiated by the consumer." 15 U.S.C. § 1681g(a)(1)-(2), (5). Gagliardi contends that Equifax violated § 1681g by failing to afford him "any form of disclosure." ECF No. 10 at ¶ 127. The basis for this allegation is unclear. Equifax sent Gagliardi two copies of his credit disclosure in 2009. ECF No. 36-1 at ¶¶ 51-52. The first disclosure was made to Gagliardi in May 2009. *Id.* at ¶ 51. The disclosure indicated that the most recent inquiry into Gagliardi's credit history preceding Columbia Gas' statement of April 27, 2009, had been made on July 17, 2008. ECF No. 36-3 at 1. In a responsive letter to Equifax dated May 22, 2009, Gagliardi stated:

> You will note that apart from the inquiry date of May 12, 2009 that the most recent inquiry was back in [sic] July 17, 2008. If you examine the correspondence and exhibits sent you, which include a form letter from Columbia Gas, you will confirm that either Columbia Gas falsely claims to have based their decision upon an Equifax report or your company is falsely concealing its participation in the Columbia Gas matter, which occurred during the latter part of April 2009.

*Id.* When Gagliardi's amended complaint is read through the prism of this letter, it appears that the claim under § 1681g is based on a purely subjective belief that Equifax failed to "disclose" its alleged communications with Columbia Gas.

In her declaration, Banks stated that Equifax had no record of inquiries into Gagliardi's credit history initiated by Columbia Gas. ECF No. 36-1 at ¶ 45. Equifax is not legally required (and cannot be expected) to disclose information that does not exist. It is true that Columbia Gas *partially* attributed its initial decision to terminate Gagliardi's natural gas service to a "credit score obtained from Equifax." ECF No. 36-2 at 85. Columbia Gas, however, is no longer a defendant in this action. ECF No. 9. Gagliardi has not sought discovery as to why Columbia Gas referenced Equifax in its statement of April 27, 2009. The statement itself is the *only* evidence relied upon by Gagliardi to implicate Equifax in Columbia Gas' decision to temporarily

terminate his service.  ECF No. 36-2 at 35-38.  According to Banks, Equifax played no role in

the preparation of that statement.  ECF No. 36-1 at ¶ 42.  The record contains no evidence which

contradicts the statements made by Banks.  "A defendant need not prove a negative when it

moves for summary judgment on an issue that the plaintiff must prove at trial."  *Parker v. Sony*

*Pictures Entertainment, Inc.*, 260 F.3d 100, 111 (2d Cir. 2001).  Since Gagliardi's claim under §

1681g is based on Equifax's alleged failure to disclose "information" that has not been shown to

exist, Equifax is clearly entitled to summary judgment with respect to that claim.

Credit reporting agencies are required to retain "trained personnel" possessing the

knowledge necessary to explain the information that is disclosed to consumers.  15 U.S.C. §

1681h(c).  Gagliardi claims that Equifax violated this statutory mandate.  ECF No. 10 at ¶ 127.

This claim appears to be based on difficulties that Gagliardi experienced while trying to speak

directly with Equifax personnel by means of a telephone.  ECF No. 36-2 at 35-38.  In any event,

the burden is on Gagliardi to demonstrate that Equifax's personnel were insufficiently trained or

accessible to satisfy § 1681h(c).  *Holmes v. TeleCheck International, Inc.*, 556 F.Supp.2d 819,

841 (M.D.Tenn. 2008).

Banks declared that Equifax employs trained personnel who are available to answer

questions from consumers about the information contained in their credit disclosures.  ECF No.

36-1 at ¶ 33.  The record contains a copy of the credit disclosure that was sent to Gagliardi on

December 16, 2009.  ECF No. 36-5.  Included with the disclosed information was a telephone

number that a consumer could dial if he or she wanted to speak directly with a customer service

representative.  *Id.* at 2.  Customer service representatives were apparently available between

9:00 A.M. and 5:00 P.M. on weekdays.  *Id.*  Gagliardi was instructed to contact a customer

service representative within sixty days if he had questions about his credit disclosure.  *Id.*

Gagliardi testified that he had obtained a telephone number for Equifax's "headquarters" while conducting an online search. ECF No. 36-2 at 37-38. He provided no indication that he had dialed the specific telephone number available to those seeking to speak directly with a customer service representative. Since the record contains no evidence suggesting that Gagliardi properly contacted the trained personnel employed by Equifax, no reasonable trier of fact could conclude that Equifax violated § 1681h(c).

Section 1681i(a)(1)(A) of the FCRA provides that "if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller." 15 U.S.C. § 1681i(a)(1)(A). Gagliardi appears to assert a claim under this statutory provision. ECF No. 10 at ¶ 127. In order to establish that Equifax is liable under § 1681i(a)(1)(A) for failing to reinvestigate disputed information, Gagliardi must show that: (1) Equifax had a statutory duty to reinvestigate his credit file under the circumstances of this case; and (2) Equifax would have discovered a material inaccuracy or discrepancy had a reasonable investigation been conducted. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 712-713 (3d Cir. 2010).

A consumer reporting agency has no statutory duty to conduct a reinvestigation prior to being notified that *information* contained in a consumer's credit file is disputed. *Rufflin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 608 (7th Cir. 2005); *Casella v.*

*Equifax Credit Information Services*, 56 F.3d 469, 474 (2d Cir. 1995).  In his letter of May 22, 2009, Gagliardi did not dispute any of the information contained in his credit file.  Instead, he simply asked Equifax to reinvestigate its records in order to determine whether Columbia Gas had wrongfully been provided with damaging information about his credit history, or whether Columbia Gas was "mistaken regarding the involvement of [Equifax]" in the decision to terminate his natural gas service.  ECF No. 36-3 at 2.  Gagliardi never disputed "the completeness or accuracy" of an "item of information" *contained in his file*.  15 U.S.C. § 1681i(a)(1)(A).  The "item of information" disputed by Gagliardi was an allegedly low credit score that had been attributed to Equifax by Columbia Gas.  In certain instances, a consumer reporting agency has an obligation to independently verify the accuracy of the *information* that it possesses.  *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225-226 (3d Cir. 1997).  Nevertheless, it does not follow that a consumer reporting agency has a statutory duty to verify the *inaccuracy* of information that it does *not* possess.  *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991)("When a consumer brings a claim for violation of this duty, a court is generally called upon to determine whether the credit reporting agency could have discovered an error *in a particular report* through a reasonable investigation.")(emphasis added).

Banks declared that Gagliardi had not disputed any *items* of information contained in his credit file subsequent to June 2008.  ECF No. 36-1 at ¶ 55.  Gagliardi points to no evidence which contradicts this assertion.  Since Gagliardi cannot show that he "disputed" an "item of information" contained in his credit file, he cannot establish that Equifax was under a statutory duty to reinvestigate "disputed information."  15 U.S.C. § 1681i(a)(1)(A).  In the absence of "disputed information," there was *nothing* for Equifax to reinvestigate.[13]  Where a consumer

---

[13] Although § 1681i(a) governs certain communications between a consumer reporting agency and a third party concerning the credit file of a consumer, it does not govern communications between a third party and a consumer

reporting agency's reinvestigation reveals that an "item of information" contained in a consumer's credit file is inaccurate, incomplete or unverifiable, the FCRA directs the agency to "promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation," and to "promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." 15 U.S.C. § 1681i(a)(5)(i)-(ii). This remedial language indicates that the purpose of a "reinvestigation" under § 1681i(a)(1)(A) is to provide for the deletion of inaccurate information found in a consumer's *existing* credit file. Gagliardi cannot identify information that should have been *deleted* from his credit file. Thus, he cannot show that Equifax committed an actionable violation of § 1681i(a)(1)(A).

Even if Gagliardi could show that his statutory rights were violated, he would be unable to demonstrate that he sustained damages "as a result of" Equifax's failure to comply with the FCRA. 15 U.S.C. §§ 1681n(a)(1)(A), 1681o(a)(1). A plaintiff cannot obtain an award of "actual damages" under the FCRA without establishing a causal relationship between a statutory violation and the harm for which redress is sought.[14] *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001). Gagliardi bears the burden of proving causation by a preponderance of the evidence. *Philbin*, 101 F.3d at 966. As noted earlier, Columbia Gas' statement of April 27, 2009, informing Gagliardi of the temporary termination of his natural gas service is the *only* evidence contained in the record that links Equifax to the underlying payment dispute. ECF No.

---

regarding their interactions with a consumer reporting agency. 15 U.S.C. § 1681i(a)(2). Gagliardi cannot invoke this statutory provision as a vehicle for holding Equifax responsible for the assertion made by Columbia Gas in the statement of April 27, 2009. ECF No. 36-2 at 85.

[14] Statutory "damages of not less than $100 and not more than $1,000" are available to a plaintiff who can show that a defendant has "willfully" failed to comply with the FCRA. 15 U.S.C. § 1681n(a)(1)(A). A "willful" violation of the FCRA can also trigger an award of punitive damages. 15 U.S.C. § 1681n(a)(2); *Rambarran v. Bank of America, N.A.*, 609 F.Supp.2d 1253, 1270 (S.D.Fla. 2009); *Scheel-Baggs v. Bank of America*, 575 F.Supp.2d 1031, 1043 (W.D.Wis. 2008). Only "actual damages" are available to a plaintiff who proves that a defendant has committed a "negligent" statutory violation. 15 U.S.C. § 1681o(a)(1). Given that Gagliardi cannot establish a violation of the FCRA in the first place, it follows *a fortiori* that he cannot show that Equifax "willfully" violated the FCRA.

36-2 at 85.  Gagliardi points to *no* evidence implicating Equifax in Columbia Gas' subsequent decision to discontinue his service on September 21, 2009.  ECF No. 36-2 at 35-38.  The chain of causation is even more attenuated with respect to the damages allegedly caused by the burglary.  *Calex Express, Inc.*, 401 F.Supp.2d at 413-414 (finding an intervening act of forgery to be a superseding cause of a plaintiff's damages).  For all of these reasons, Equifax's motion for summary judgment will be granted as to all claims asserted by Gagliardi under the FCRA.

        **C.**    **The Claims Arising Under Pennsylvania Law**

Having determined that all of Gagliardi's federal claims should be dismissed, the Court may decline to exercise supplemental jurisdiction over his state claims pursuant to 28 U.S.C. § 1367(c)(3).  The United States Court of Appeals for the Third Circuit has admonished that, in this situation, a federal court should consider the merits of a plaintiff's remaining state claims only where "considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).  In this case, Equifax argues that some of Gagliardi's state claims are preempted by the FCRA.  ECF No. 35 at 18-19.  Because the disposition of these claims depends, to some extent, on the content of federal law, the Court has an "affirmative justification" for adjudicating them.  *Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 392 (2d Cir. 2007)(observing that the question of federal preemption should be decided before supplemental jurisdiction over any surviving state claims is declined).

Gagliardi asserts a claim for "infliction of severe emotional distress."  ECF No. 10 at ¶¶ 131-138.  He does not specify whether this is a claim for *intentional* or *negligent* infliction of emotional distress.  *Id.*  Equifax argues that this claim is preempted by § 1681h(e) of the FCRA

to the extent that it is based on a theory akin to negligence.  ECF No. 35 at 18-19.  Section

1681h(e) provides:

> **(e) Limitation of liability.**  Except as provided in sections 616 and 617 [15
> U.S.C. §§ 1681n and 1681o], no consumer may bring any action or proceeding in
> the nature of defamation, invasion of privacy, or negligence with respect to the
> reporting of information against any consumer reporting agency, any user of
> information, or any person who furnishes information to a consumer reporting
> agency, based on information disclosed pursuant to section 609, 610, or 615 [15
> U.S.C. § 1681g, 1681h, or 1681m], or based on information disclosed by a user of
> a consumer report to or for a consumer against whom the user has taken adverse
> action, based in whole or in part on the report[,] except as to false information
> furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e).  Where a plaintiff's claim is premised on an alleged breach of a

contractual or fiduciary duty, Pennsylvania's cause of action for negligent infliction of emotional

distress is governed by ordinary principles of negligence law.[15]  *Toney v. Chester County

Hospital*, 961 A.2d 192, 197-198 (Pa.Super.Ct. 2008).  Because any negligent infliction of

emotional distress claim asserted by Gagliardi in this case would be "in the nature of"

negligence, it is preempted by the plain terms of § 1681h(e).[16]  *Torrance v. Firstar*, 529

F.Supp.2d 836, 844, n. 4 (S.D.Ohio 2007).

Gagliardi apparently bases his "emotional distress" claim, at least in part, on a theory of

*intentional* infliction of emotional distress.  ECF No. 10 at ¶ 138.  In order to recover damages

pursuant to such a theory, Gagliardi must show that: (1) Equifax engaged in extreme and

outrageous conduct; (2) the conduct was *intentional* or *reckless*; (3) the conduct *caused* him to

---

[15] Pennsylvania restricts its cause of action for negligent infliction of emotional distress to four narrowly-defined factual scenarios.  *Toney v. Chester County Hospital*, 961 A.2d 192, 197-198 (Pa.Super.Ct. 2008).  While it is not clear whether a fiduciary relationship exists between a consumer reporting agency and a consumer, it is clear that any claim for negligent infliction of emotional distress asserted by Gagliardi in this case must arise from Equifax's alleged breach of a fiduciary duty.  *Id.*  His claim is obviously not based on "a physical impact," "a fear of impending physical injury," or "a tortious injury" suffered by a close relative.  *Id.*

[16] Even if this claim was not preempted by federal law, it would not survive Equifax's motion for summary judgment in light of the attenuated link between the alleged conduct of Equifax and the subsequent "emotional distress" suffered by Gagliardi.  *Brown v. Philadelphia College of Osteopathic Medicine*, 760 A.2d 863, 868-871 (Pa.Super.Ct. 2000).

suffer emotional distress; and (4) the emotional distress was severe.  *Hoy v. Angelone*, 691 A.2d

476, 482 (Pa.Super.Ct. 1997).  Since *reckless* conduct may result in liability for intentional

infliction of emotional distress under Pennsylvania law, the extent to which Gagliardi's claim is

preempted by § 1681h(e) depends on whether the *reckless* disclosure of information concerning

a consumer can suffice to establish the requisite "malice or willful intent to injure such

consumer."  15 U.S.C. § 1681h(e).

Section 1681n(a) provides that "[a]ny person who willfully fails to comply with any

requirement imposed under [the FCRA] with respect to any consumer is liable to that consumer

in an amount equal to the sum of . . . any actual damages sustained by the consumer as a result of

the failure or damages of not less than $100 and not more than $1,000 . . . [and in] such amount

of punitive damages as the court may allow . . . ."  15 U.S.C. § 1681n(a)(1)(A), (2).  Negligent

noncompliance with the substantive provisions of the FCRA can result in liability only for an

aggrieved individual's "actual damages."  15 U.S.C. § 1681o(a)(1).  In *Safeco Insurance Co. v.*

*Burr*, 551 U.S. 47, 52-71, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007), the Supreme Court held that

*reckless* (as well as *intentional*) violations of the FCRA constitute "willful" statutory violations

within the meaning of § 1681n(a).  A person's behavior is deemed to be "reckless" where he or

she acts, or fails to satisfy a duty to act, "in the face of an unjustifiably high risk of harm that is

either known or so obvious that it should be known."  *Farmer v. Brennan*, 511 U.S. 825, 836,

114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  It is not clear whether the reasoning employed in

*Safeco Insurance Co.* should be extended to equate the "willfulness" required under § 1681n(a)

with the "malice or willful *intent to injure*" referenced in § 1681h(e).  *Bryan v. United States*,

524 U.S. 184, 191, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998)(referring to the word "willfully" as

"a word of many meanings whose construction is often dependent on the context in which it

appears")(internal quotation marks omitted); *Cushman*, 115 F.3d at 229 (assuming, but not *deciding*, that "a showing of 'malice or willful intent to injure' pursuant to § 1681h(e) is identical to proof of willfulness under § 1681n" because the parties had not contested the issue); *Thornton v. Equifax, Inc.*, 619 F.2d 700, 706 (8th Cir. 1980)(contrasting the standards applicable under §§ 1681n and 1681o with "the higher requirement of proof of malice or willful intent to injure" applicable under § 1681e(h)); *Lawrence v. Trans Union LLC*, 296 F.Supp.2d 582, 590-591 (E.D.Pa. 2003)(applying the "willfulness" standard applicable under § 1681n(a) to reject a defendant's argument concerning the application of § 1681h(e)). That question need not be decided in this case, since Gagliardi's claim is insufficient to establish Equifax's liability under Pennsylvania law even if it is assumed that the claim is not preempted by the FCRA.

As an initial matter, Gagliardi cannot recover damages under an "intentional infliction of emotional distress" theory without producing "competent medical evidence" establishing "the existence of [his] alleged emotional distress." *Kazatsky v. King David Memorial Park*, 527 A.2d 988, 995 (Pa. 1987); *Cruz v. Princeton Insurance Co.*, 972 A.2d 14, 18-19 (Pa.Super.Ct. 2009). The record contains no such "expert medical confirmation that [Gagliardi] actually suffered the claimed distress." *Kazatsky*, 527 A.2d at 995. Moreover, Gagliardi's testimony concerning his hospitalization would not be sufficient to entitle him to relief even if it were corroborated by "competent medical evidence." Gagliardi testified that his need for inpatient treatment had been triggered by the *burglary*. ECF No. 36-2 at 53-55. As noted earlier, the injuries allegedly sustained by Gagliardi as a result of the intervening criminal acts committed by third parties cannot be attributed to the actions or inactions of Equifax (or Columbia Gas). *Calex Express, Inc.*, 401 F.Supp.2d at 413-414. Under the present circumstances, no reasonable trier of fact could conclude that Gagliardi's "emotional distress" was proximately caused by conduct

engaged in by Equifax. *Angus v. Shiley, Inc.*, 989 F.2d 142, 147-148 (3d Cir. 1993).

Consequently, Equifax is entitled to summary judgment with respect to Gagliardi's "intentional

infliction of emotional distress" claim irrespective of whether that claim is preempted by federal

law. *Silver v. Mendel*, 894 F.2d 598, 607, n. 19 (3d Cir. 1990).

Gagliardi's only remaining claim arises under the UTPCPL.[17]  ECF No. 10 at ¶¶ 45-53.

The UTPCPL declares certain "unfair methods of competition" and "unfair or deceptive acts or

practices" to be unlawful.  73 PA. STAT. §§ 201-2(4), 201-3.  A civil action to redress violations

of the UTPCPL may be brought by "[a]ny person who purchases or leases goods or services

primarily for personal, family or household purposes and thereby suffers any ascertainable loss

of money or property, as a result of the use or employment by any person of a method, act or

practice declared unlawful . . . ."  73 PA. STAT. § 201-9.2(a).  An individual who does not

"purchase" or "lease" "goods or services" from a defendant has no standing to bring an action

under the UTPCPL.  *Balderston v. Medtronic Sofamor Danek, Inc.*, 285 F.3d 238, 241-242 (3d

Cir. 2002).  In *Lawrence v. Trans Union LLC*, 296 F.Supp.2d 582, 592 (E.D.Pa. 2003), the

United States District Court for the Eastern District of Pennsylvania held that a consumer who

has not purchased or leased "goods or services" from a consumer reporting agency cannot

maintain an action against the agency under the UTPCPL.  Subsequent to the decision in

*Lawrence*, the Pennsylvania Supreme Court has clarified that a consumer has no cause of action

under the UTPCPL unless he or she has justifiably relied on an "unfair" or "deceptive" act

prohibited thereunder.  *Toy v. Metropolitan Life Insurance Co.*, 928 A.2d 186, 201-203 (Pa.

2007).

---

[17] Although the amended complaint includes a claim for civil conspiracy, Gagliardi has clearly expressed his intention to abandon that claim.  ECF No. 10 at ¶¶ 54-67; ECF No. 44 at 2.  Even if Gagliardi had not abandoned his civil conspiracy claim, his inability to establish the existence of an underlying tort would have entitled Equifax to summary judgment with respect to that claim in any event.  *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 407 (3d Cir. 2000).

Gagliardi bases his UTPCPL claim on Equifax's alleged "deceptive business practice" of allowing its contact information to be concealed from the statement sent by Columbia Gas on April 27, 2009. ECF No. 10 at ¶ 46. He does not allege that he purchased or leased "goods or services" from Equifax, nor does he contend that he justifiably relied on false or deceptive representations made to him by Equifax. *Id.* at ¶¶ 45-53. Therefore, he has no cognizable claim under the UTPCPL. Furthermore, Banks declared that Equifax had played no role in creating Columbia Gas' statement of April 27, 2009. ECF No. 36-1 at ¶ 42. Since Gagliardi points to no evidence which contradicts Banks' assertion, he would be unable to establish the factual basis for his UTPCPL claim even if that claim were otherwise cognizable in this context. For these reasons, Equifax is entitled to summary judgment with respect to Gagliardi's UTPCPL claim.

### D.     The Constitutional Challenge to Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56 provides for the entry of summary judgment in favor of a party who demonstrates that "there is no genuine dispute as to any material fact," and that a "judgment as a matter of law" is warranted. FED. R. CIV. P. 56(a). For the foregoing reasons, Equifax is entitled to summary judgment with respect to all of Gagliardi's claims. In an attempt to defeat Equifax's motion for summary judgment, Gagliardi contends that Rule 56 violates several provisions of the United States Constitution. ECF No. 41 at 10-15. Specifically, he argues that the entry of summary judgment against him in this case would violate his "right of trial by jury" under the Seventh Amendment, the Privileges and Immunities Clause of Article IV, § 2, the Due Process Clause of the Fifth Amendment, and the Privileges or Immunities, Due Process and Equal Protection Clauses of the Fourteenth Amendment. *Id.* at 11.

The Seventh Amendment provides:

In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury

shall be otherwise re-examined in any Court of the United States, than according
to the rules of the common law.

U.S. CONST., AMEND. VII.  Gagliardi asserts that the Seventh Amendment accords him the right

to have his claims decided by a jury, and that the entry of summary judgment in favor of Equifax

would unconstitutionally infringe that right.  ECF No. 44 at 6-7.  Over a century ago, however,

the Supreme Court rejected this reading of the Seventh Amendment, holding that rules

permitting a court to enter summary judgment in favor of a moving party could lawfully

"preserve the court from frivolous defences [sic] and [] defeat attempts to use formal pleading as

[a] means to delay the recovery of just demands."  *Fidelity & Deposit Co. v. United States*, 187

U.S. 315, 320, 23 S.Ct. 120, 47 L.Ed. 194 (1902).  "It is emphatically the province and duty of

the *judicial department* to say what the law is."  *Marbury v. Madison*, 5 U.S. 137, 177, 2 L.Ed.

60 (1803)(emphasis added).  A lay jury cannot be asked to decide legal questions.  *Bagley v.

Blagojevich*, 685 F.Supp.2d 904, 912 (C.D.Ill. 2010).  The Seventh Amendment requires that a

jury "be allowed to make reasonable inferences from facts proven in evidence having a

reasonable tendency to sustain them."  *Galloway v. United States*, 319 U.S. 372, 396, 63 S.Ct.

1077, 87 L.Ed. 1458 (1943).  It does not require a court to empanel a jury at the behest of a

plaintiff having no cognizable claim or no evidentiary support for his or her factual allegations.

The entry of summary judgment for or against a party is consistent with the requirements of the

Seventh Amendment when "no triable issue exists to be submitted to a jury."  *Shannon v.

Graves*, 257 F.3d 1164, 1167 (10th Cir. 2001).  Since no triable issue exists in this case, the entry

of summary judgment in favor of Equifax will not contravene the Seventh Amendment.

The Privileges and Immunities Clause of Article IV, § 2, provides that "[t]he Citizens of

each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

U.S. CONST., ART. IV, § 2. This constitutional provision "'establishes a norm of comity' . . . that is to prevail among the States with respect to their treatment of each other's residents." *Hicklin v. Orbeck*, 437 U.S. 518, 523-524, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978)(footnote omitted), quoting *Austin v. New Hampshire*, 420 U.S. 656, 660, 95 S.Ct. 1191, 43 L.Ed.2d 530 (1975). In *Paul v. Virginia*, 75 U.S. 168, 180, 19 L.Ed. 357 (1869), the Supreme Court explained that "the privileges and immunities secured to citizens of each State in the several States, by the provision in question, are those privileges and immunities which are common to the citizens in the latter States under their constitution and laws by virtue of their being citizens." In other words, the Privileges and Immunities Clause precludes a State from engaging in certain forms of discrimination against citizens or residents of other States. *Saenz v. Roe*, 526 U.S. 489, 501-502, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999). This provision of the Constitution is simply not implicated in this case. Gagliardi does not challenge an action taken *by a State*, nor does he contend that he is being discriminated against because of his State of residence. His assertion that the entry of summary judgment against him will violate the Privileges and Immunities Clause is wholly without merit. ECF No. 41 at 11.

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law . . . ." U.S. CONST., AMEND. V. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). In the summary judgment context, it has been noted that "the absence of an opportunity to supplement written submissions with oral advocacy" does not "constitute a denial of due process." *Cruz v. Melecio*, 204 F.3d 14, 19 (1st Cir. 2000)(footnote omitted). Gagliardi

has been afforded the opportunity to be heard through his written submissions, which have been considered by the Court in this case. Since the Due Process Clause does not give him the right to an oral hearing prior to the dismissal of his claims, it follows *a fortiori* that the Due Process Clause does not require a *jury trial* under these circumstances. *Green v. WCI Holdings Corp.*, 136 F.3d 313, 316 (2d Cir. 1998).

Gagliardi's remaining challenges to Rule 56 arise under § 1 of the Fourteenth Amendment. That section provides:

> All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No *State* shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any *State* deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST., AMEND. XIV, § 1 (emphasis added). By its very terms, the second sentence of § 1 applies only to *state* actors. It does not apply to *federal* actors. *Newsome v. Equal Employment Opportunity Commission*, 301 F.3d 227, 232-233 (5th Cir. 2002); *Hudson Valley Black Press v. Internal Revenue Service*, 307 F.Supp.2d 543, 545, n. 4 (S.D.N.Y. 2004). Since Rule 56 is a part of *federal* law, it cannot contravene the Privileges or Immunities, Due Process and Equal Protection Clauses of the Fourteenth Amendment. *San Francisco Arts & Athletics, Inc. v. United States Olympic Committee*, 483 U.S. 522, 542, n. 21, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987).

Even if Gagliardi could establish the applicability of § 1 in this case, his challenge to Rule 56 would not succeed. The Court has already explained that the Federal Judiciary's procedures for evaluating motions for summary judgment provide litigants with sufficient "due process of law" to satisfy the demands of the Constitution. The Privileges or Immunities Clause protects certain attributes of *United States citizenship*, such as a citizen's right to establish

residence within any State that he or she chooses, and to claim *state* citizenship therein. *Saenz*, 526 U.S. at 503-504. The right to a jury trial in civil cases has never been regarded as a "privilege" or "immunity" of United States citizenship. *Walker v. Sauvinet*, 92 U.S. 90, 92, 23 L.Ed. 678 (1876); *GTFM, LLC v. TKN Sales, Inc.*, 257 F.3d 235, 240 (2d Cir. 2001); *R.J. Reynolds Tobacco Co. v. Bonta*, 272 F.Supp.2d 1085, 1110-1111 (E.D.Cal. 2003). The Equal Protection Clause "creates no substantive rights." *Vacco v. Quill*, 521 U.S. 793, 799, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997). Instead, it "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). The Due Process Clause of the Fifth Amendment imposes a similar precept on the Federal Government. *Bolling v. Sharpe*, 347 U.S. 497, 498-500, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Since Rule 56 applies *equally* to all pending motions for summary judgment, it does not implicate this constitutional mandate. Gagliardi's constitutional challenge to Rule 56 is without merit. Equifax's motion for summary judgment will be granted in its entirety.

## V.    Conclusion

The record is totally devoid of evidence suggesting that the permanent termination of Gagliardi's natural gas service on September 21, 2009, was attributable to actions taken by Equifax. Under these circumstances, Equifax's motion for summary judgment must be granted with respect to all claims referenced in Gagliardi's amended complaint.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN GAGLIARDI,         )
                                 )
       Plaintiff,          )
                                 )
       v.                 )        **Civil Action No. 09-1612**
                                 )
**EQUIFAX INFORMATION**     )        **Senior Judge Donetta W. Ambrose**
**SERVICES, LLC,**          )
                                 )
       Defendant.      )

## ORDER OF COURT

AND NOW, this 3rd day of February, 2011, for the reasons stated in the foregoing memorandum opinion, IT IS HEREBY ORDERED that the Defendant's Motion for Summary Judgment (*Document No. 34*) is **GRANTED** in its entirety.

BY THE COURT:

s/Donetta W. Ambrose
    Donetta W. Ambrose
    United States Senior District Judge

cc:    All counsel of record

       John Gagliardi
       195 Wall Road
       Jefferson Hills, PA  15025